UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CR-00001-GNS

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.

DOUG CHAPLIN                                                                                                    DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Objections (DN 33) to the Magistrate Judge's Finding of Fact, Conclusions of Law, and Recommendation (DN 30). For the following reasons, Magistrate Judge Report and Recommendation ("R&R") is **ADOPTED** and Defendant's Objections are **OVERRULED**.

### I.   BACKGROUND

On May 18, 2015, a 911 caller, who was identified as the brother of Defendant Doug Chaplin ("Chaplin"), reported that Chaplin was discharging one or more firearms near the brother's cabin. (R. & R. 2, DN 30). Because Chaplin is a convicted felon, he is prohibited from possessing a firearm. (R. & R. 2). The 911 dispatcher relayed the contents of the call to the reporting units. (R. & R. 2). As the Magistrate Judge noted, the information relayed included: (i) a person by Defendant's name was shooting guns at or behind a residence; (ii) Chaplin is a convicted felon who is very dangerous and has used methamphetamine in the past; (iii) he may have been shooting automatic weapons; (iv) information about the scene of the shooting; (v) an apparent statement by Chaplin that he would not go back to jail; (vi) a report of hearing ten to twelve shots per minutes, and that weapons are of four different calibers, including potentially a

shotgun; and (vii) two males were leaving the cabin in a maroon Toyota 4Runner at a high rate of speed and the direction they were traveling. (R. & R. 2-3 (citing Hr'g Ex. 1A)).

Detective Rusty Anderson ("Detective Anderson") of the Barren County Sheriff's Office was the first reporting officer to encounter the burgundy Toyota 4Runner operated by Chaplin traveling in the opposite direction. (R. & R. 3). Detective Anderson radioed his observations to the other units and turned around to pursue the vehicle. (R. & R. 3). The other responding units, which included Deputy Chris Wyatt ("Deputy Wyatt"), Deputy Mike Houchens ("Deputy Houchens"), Detective Eric Guffey ("Detective Guffey"), and Trooper B.J. Eaton pulled over to await Chaplin, and after he passed, the units pursued him with their lights and sirens activated. (R. & R. 3). Chaplin then turned off Burkesville Road onto Kino Road at what the Magistrate Judge characterized as a slow-speed chase at a speed of ten to fifteen miles per hour. (R. & R. 3). Approximately one mile later, Chaplin stopped at his mother's residence. (R. & R. 3). Both Defendant and his passenger denied any awareness of the police pursuit because Chaplin had the car stereo playing at a high volume. (R. & R. 4).

When the vehicle came to a stop, the officers exited their vehicles and took defensive positions with weapons drawn. (R. & R. 4). After Chaplin was ordered to exit the vehicle, he left the vehicle several minutes later with his hands in the air. (R. & R. 4). The officers ordered him to walk back towards the officers, and then Chaplin was handcuffed. (R. & R. 4). No weapons or contraband were found on Defendant when he was searched. (R. & R. 4).

According to Deputy Wyatt's testimony, he asked Chaplin about the location of the firearms after Defendant was handcuffed. (R. & R. 4). While Chaplin initially denied possessing any weapons, he eventually admitted that there were weapons in the back of the Toyota 4Runner. (R. & R. 4). During the evidentiary hearing, Trooper Eaton also recalled

2

hearing Chaplin tell another officer that the firearms were in the back of the vehicle. (R. & R. 4). No one disputes that the exchange about the location of the firearms occurred before Chaplin received a *Miranda* warning. (R. & R. 4).

Deputy Wyatt had to obtain assistance from Chaplin to open the rear hatch of the vehicle. (R. & R. 4). Deputy Wyatt testified that the firearms were in plain view, but he could not otherwise see the firearms until the hatch was opened. (R. & R. 4). Chaplin has disputed Deputy Wyatt's recollection of that event and testified that he only told the officers that the lock did not work. (R. & R. 4-5).

Detective Anderson, Deputy Houchens, and Deputy Guffey were responsible for removing the passenger from the vehicle. (R. & R. 5). During the hearing, Deputy Guffey testified that he observed a digital scale on top of the center console and an empty handgun holster between the front and rear seats in plain view. (R. & R. 5). After the search of the vehicle, the officers found additional physical evidence to support the crimes charged. (R. & R. 5).

## II. STANDARD OF REVIEW

In *United States v. Curtis*, 237 F.3d 598 (6th Cir. 2001), the Sixth Circuit articulated the proper standard of review for objections to a ruling or recommendation by a Magistrate Judge, stating:

> [Section] 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall apply a "clearly erroneous or contrary to law" standard of review for the "nondispositive" preliminary measures of § 636(b)(1)(A). Conversely, "dispositive motions" excepted from § 636(b)(1)(A), such as motions for summary judgment or *for the suppression of evidence*, are governed by the *de novo* standard.

*Id.* at 603 (emphasis added) (internal citation omitted) (citation omitted). "When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a *de novo* determination of the issues." *United States v. Bermudez*, No. 99-6097, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980)). "Credibility determinations of the magistrate judge who personally listened to the testimony . . . should be accepted unless in [its] de novo review of the record [the district court] finds a reason to question the magistrate judge's assessment." *United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (internal quotation marks omitted) (citations omitted).

### III. DISCUSSION

The Magistrate Judge recommended denial of Defendant's Motion to Suppress. (R. & R. 17). In his objections, Chaplin raises three alleged errors with the R&R: (i) the police officers' conduct following the 911 call; (ii) the finding that Chaplin's statements without the benefit of the *Miranda* warning were valid under the Fourth Amendment; and (iii) the finding that the warrantless search was valid. (Def.'s Objs. to R. & R. 1-4, DN 33 [hereinafter Def.'s Objs.]).

In his first objection, Chaplin challenges the R&R's finding that the 911 call and the police officers' knowledge of Chaplin's background provided a basis for the stop. (Def.'s Objs. 1-2). As the Magistrate Judge noted in the R&R, the United States does not dispute that there was no traffic violation providing a basis for the stop. (R. & R. 7). The Magistrate Judge concluded that there was an indicia of reliability in the 911 caller identified as Chaplin's brother even though the caller's identity was unverified at the time the traffic stop occurred. (R. & R. 8). The conclusion was based on: Detective Anderson's familiarity with Chaplin and his family; Deputy Wyatt's personal acquaintance with Chaplin and knowledge of his felony conviction

4

history; and Detective Guffey's knowledge of Chaplin using and dealing in methamphetamine, which information Detective Guffey received from Chief Coffelt. (R. & R. 8-9). The Magistrate Judge also found it significant that Chaplin and a male companion were traveling in the vicinity, in that direction, and in a burgundy Toyota 4Runner, as described by the 911 caller. (R. & R. 9). All of that information coupled with the 911 call was reasonably sufficient to suspect that Chaplin was a felon in possession of a firearm. *See United States v. Charles*, 801 F.3d 885, 860 (7th Cir. 2015) ("[T]he dispatcher's report of Summerise's 911 call establishes beyond dispute that Sergeant Baranowski had probable cause to believe that Charles was carrying or had very recently carried a handgun.").

After reviewing the R&R, the Court also can find no error in the Magistrate Judge's conclusions as to Chaplin's statements made prior to any *Miranda* warning, notwithstanding Defendant's objection. As the Magistrate Judge noted due to the conflicting nature of the testimony, this issue necessarily requires the Court to make a credibility determination with the Court serving as the finder of fact in ruling on a motion to suppress. *See United States v. Creek*, 403 F.2d 220, 220-21 (6th Cir. 1968) (citation omitted). *See also United States v. Howard*, 787 F. Supp. 2d 330, 332 (D.N.J. 2011) ("In deciding a motion to suppress evidence, the trial court determines the credibility of witnesses. As the finder of fact, the court can accept or reject any or all of a witness's testimony." (internal citation omitted) (citation omitted)). As the Sixth Circuit has cautioned, "a district court normally should not reject a proposed finding that rests on a credibility determination without hearing testimony from the witness." *United States v. Bermudez*, 238 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. 2000). After listening to the testimony of witnesses during the suppression hearing, the Magistrate Judge found Detective Wyatt's testimony more credible that Chaplin and his passenger. (R. & R. 11-13). Based on that

5

determination, the Magistrate Judge concluded that the statement was not a product of coercion. (R. & R. 13-14). The Court agrees with the reasoning articulated in the R&R and Magistrate Judge's ruling is accepted, as there is no reason to question his assessment. *See Johnson*, 2011 WL 3844194, at *2.

Finally, Chaplin objects to the Magistrate Judge's finding that officer safety justified the questioning of Defendant that led to the discovery of firearms in the back of the Toyota 4Runner. (Def.'s Objs. 3-4). The Supreme Court has recognized the public safety exception to *Miranda*, under which "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *New York v. Quarles*, 467 U.S. 649, 657 (1984). Applying the two-prong test articulated in *United States v. Williams*, 483 F.3d 425 (6th Cir. 2007), the Magistrate Judge found that the first prong was satisfied because "[t]he purpose of the traffic stop was to investigate whether Chaplin was in possession of firearms pursuant to a recent report." (R. & R. 15). In applying the second prong to determine whether another person besides Chaplin had the ability to access a weapon and cause harm with it, the Magistrate Judge concluded the prong was met because Chaplin's passenger had the ability to access the firearms in the vehicle. (R. & R. 16). Accordingly, the Court concludes that the Magistrate Judge properly recommended that the fruits of the search not be excluded based on the public safety exception.[1]

---

[1] At the end of his objections, Defendant "incorporates by reference, al assertions, arguments and authority fully detailed in the Defendant's Motion to Suppress and Brief in Support of Motion to [S]uppress in addition to the arguments above." (Def.'s Objs. 4). That statement, however, does not constitute a "specific written objection to the proposed findings and recommendations" as required by Fed. R. Civ. P. 72(b)(2). *Edwards v. Niagara Credit Sols., Inc.*, 586 F. Supp. 2d 1346, 1348 (N.D. Ga. 2008), *aff'd on other grounds*, 584 F.3d 1350 (11th Cir. 2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 72(b)(2)). *See also Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009) ("[W]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Objections (DN 33) are **OVERRULED**, the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 30) is **ADOPTED IN ITS ENTIRETY**, and Defendant's Motion to Suppress (DN 14) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**

April 7, 2017

cc:   counsel of record

---

the Report and Recommendation only for clear error." (internal quotation marks omitted) (citation omitted)). Having reviewed the remainder of the R&R for clear error, the Court finds none.